Allen L. Ault, Ed.D. Executive Director Colorado Department of Corrections 4150 South Lowell Blvd. Denver, Colorado 80236
Dear Dr. Ault:
QUESTION PRESENTED AND CONCLUSION
To whom does the statutory requirement apply when providing a complete set of records to facilities receiving transferring inmates?
 The requirement applies to intradepartmental transfers and does not apply to emergency or temporary transfers. The records may be transferred at the same time the inmate is transferred, as long as acknowledgment of receipt of the records occurs prior to acceptance of the inmate.
ANALYSIS
Pursuant to your letter of August 9, I have examined the provisions of Senate Bill 587 (1977 Session), concerning inmate transfers, and particularly section 17-1-108(1), which requires the transfer of a "complete set of records regarding the inmate" prior to such transfer, sets forth an acceptance procedure and specifies criminal penalties for failure to transfer such records or to obtain an appropriate acceptance. In my opinion, the transfer provisions of Senate Bill 587 must be interpreted in light of the general provisions concerning custody of inmates, contained in C.R.S. 1973, 16-11-308(1) and 16-11-308(5), as amended. Those statutes make it clear that custody of all inmates committed to any institution in the Department of Corrections is in the Executive Director of the Department of Corrections. See also, C.R.S. 1973, 17-1-105;17-23-101 through 103; 17-27-106(4); and 17-40-103 and 107. Since custody remains in the Executive Director, it may be argued that no "person or agency" is receiving custody of inmates transferred between institutions under the jurisdiction of the Executive Director. On the other hand, the contrary interpretation can be derived from the language of the statute referring to transfers to another "institution," and the transfer of records and acceptance procedure could thus apply in an intradepartmental as well as an interdepartmental context. In the absence of clear language exempting intradepartmental transfers, compliance with the statutory requirement seems by far the better course. The Department of Corrections' policy should address this issue. In addition, Departmental policy should address the additional constraints on intradepartmental transfers contained in the cited statutes.
The second limitation on the scope of the statute is contained in the language "for care and keeping," which appears to limit the requirement of transfer of records to cases of more or less permanent or indefinite transfers, and not to emergency or other temporary transfers. This interpretation is particularly essential in order to cover emergency situations, such as transfers to hospital care, where the transfer of records would be onerous or virtually impossible. The definition of what constitutes a permanent or indefinite transfer as opposed to an emergency or other temporary transfer is not specified in the statute. Accordingly, the Department of Corrections' policy should address this issue.
You have inquired regarding the definition of a "complete set of records regarding the inmate," which is not defined in the statute. Insofar as the Department file, parole file and working file currently kept by the Department are "essentially duplicates of each other but are maintained at different localities," as specified in your August 9, 1977 letter, a transfer of any one of those files would appear to constitute a "complete set of records" within the meaning of the statute. However, here again, Departmental policy should address this issue in order to assure uniformity of treatment.
You have also inquired concerning the time when the "complete set of records has been sent," as required by the statute prior to the inmate's arrival. The statute appears to require that receipt of the records be acknowledged prior to the transfer. However, it is my interpretation that the transfer of records could be virtually concomitant with the transfer, so long as the acknowledgment of receipt of the records occurred prior to acceptance of the transferee inmate. Thus, the amount of lead time is again a matter of discretion for the Department of Corrections to decide, but only minimal lead time would seem to be required by the statutory language. The Department of Corrections' policy should recognize the practical difficulties in transfer of records substantially prior to transfer of the inmate, while also recognizing the necessity for some review of inmate records prior to the physical transfer if the receiving agency is to have any effective role in reviewing the appropriateness of the transfer. Perhaps intradepartmental and interdepartmental transfers should be handled differently in this regard.
Finally, you have asked for clarification regarding the discretion of the "receiving person or agency" to "approve of the transfer." In view of the clear statutory custody and discretion in the Executive Director of the Department of Corrections, it is my opinion that such approval procedures could apply only to transfers outside the Department of Corrections, and it would be my view that no "approval" would be required for intradepartmental transfers. Moreover, even were the statute to be more broadly interpreted, it would be the clear prerogative of the Executive Director of the Department of Corrections to specify the criteria for approval or to delegate the approval function to a committee, such as the Department-wide classification committee which you indicate is now being developed.
Although in my opinion the scope of C.R.S. 1973, 17-1-108(1) may be limited as regards intradepartmental transfers, it should be stressed that the legislative intent expressed in the statute should be respected by the Department in all transfers. This course is particularly to be recommended in light of the very general language of the statute and the strong criminal penalties which are provided for failure to adhere to the statute. It is my understanding that working files are regularly transferred prior to transfer of inmates between institutions, and that practice should certainly be continued. Likewise, proper acknowledgment of receipt of files and receipt of inmates would appear to be a fundamentally sound administrative policy, independent of any statutory requirement. It would appear that the best course would be to require that similar accountability procedures be instituted for both intradepartmental and interdepartmental transfers, with time limits and other criteria, such as the extent of delegation of classification, furlough approval and other functions, established at the Department level. If you require any assistance in drafting these policy statements, my office will be glad to review them.
SUMMARY
The statutory requirement that a complete set of records be provided to the facility receiving inmates (1) applies to intradepartmental transfers and (2) does not apply to emergency or temporary transfers. The records may be transferred at the same time the inmate is transferred, as long as acknowledgment of receipt of the records occurs prior to acceptance of the inmate.
Very truly yours,
 J.D. MacFARLANE Attorney General
PRISONERS CORRECTIONAL FACILITIES
C.R.S. 1973, 17-1-108
C.R.S. 1973, 16-11-308
CORRECTIONS, DEPT. OF Exec. Directors Office INSTITUTIONS, DEPT. OF
The statutory requirement that a complete set of records be provided to the facility receiving inmates (1) applies to intradepartmental transfers and (2) does not apply to emergency or temporary transfers. The records may be transferred at the same time the inmate is transferred, as long as acknowledgment of receipt of the records occurs prior to acceptance of the inmate.